[Civ. No. 64075. Second Dist., Div. Two. May 4, 1982.]

RONALD M. GREENBERG, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SORRENTO GRILL, INC., Real Party in Interest.

■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

**COUNSEL**

Buchalter, Nemer, Fields, Chrystie & Younger, Howard P. Miller and Lorraine B. Moura for Petitioner.

No appearance for Respondent.

Paul, Hastings, Janofsky & Walker, David B. Harriman, David W. Steuber, Claudia A. Carver and Kirk A. Pasich for Real Party in Interest.

**OPINION**

**COMPTON, J.**—Proceedings in mandamus to compel the Superior Court of Los Angeles County to vacate an order expunging a lis pendens.

Following this court's original denial of the petition, the Supreme Court granted a hearing but then transferred the matter to us with directions to issue an alternative writ and calendar the matter for oral argument. The order for transfer referred us to the case of *Peery* v. *Superior Court* (1981) 29 Cal.3d 837 [176 Cal.Rptr. 533, 633 P.2d 198].

After listening to oral argument, considering the petition and opposition thereto, and examining the record in light of *Peery* v. *Superior*

■■■■■■

*Court, supra,* we have concluded that the expungement of the lis pendens was proper. Thus we decline to issue the prayed for peremptory writ.

Petitioner, Ronald Greenberg, was a tenant in a high rise apartment building in the Palisades area of Santa Monica. The building was duly converted to condominium ownership.

Government Code section 66427.1 provides, inter alia, that each tenant of a building which is converted to condominium ownership shall have 90 days from the date of the issuance of the subdivision public report required by Business and Professions Code section 11018.2, to exercise the right to purchase the unit in which he or she resides on the same terms and conditions that the unit will be initially offered to the public.

It is undisputed that respondent, Sorrento Grill, Inc., the owner of the apartment building and the developer of the condominium subdivision, offered petitioner an opportunity to purchase his unit for the sum of $440,000. Nothing in the record indicates and petitioner does not claim that price was higher than the one offered to the public.

Petitioner apparently did not desire to purchase at that price but instead instituted an action for specific enforcement of an alleged contract to purchase at the price of $355,000. He recorded a lis pendens against the property.

In this specific performance action the trial court entered a summary judgment in favor of the respondent on the grounds that the alleged contract was oral and hence enforcement was barred by the statute of frauds. Petitioner noticed an appeal from the summary judgment.

Respondent then moved in the superior court to expunge the lis pendens. That court at first denied the motion but when respondent subsequently renewed the motion it was granted. These proceedings followed.

We first dispose of petitioner's contention that having once denied the motion to expunge, the lower court lacked jurisdiction to reconsider its ruling and grant the motion.

That argument is bottomed on the provisions of Code of Civil Procedure section 1008, which provides in pertinent part: "(a) When an

application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may, make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order. . . . (c) A violation of this section may be punished as a contempt; and an order. made contrary thereto may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending."

Petitioner points out that here the subsequent motion was made more than 10 days after the original denial. Unquestionably Code of Civil Procedure section 1008 provided a basis for the court to deny the second motion. The issue, however, is whether the court lacked the authority to grant the motion. ■ Our reading of the statute is that it is not jurisdictional and does not divest the court of its inherent power to reconsider and correct a ruling which it believes to have been erroneous.

Code of Civil Procedure section 1008 provides a specific statutory authorization for an application to reconsider an order—an authorization which did not previously exist. A denial of a motion, however, is not res judicata. (*Harth* v. *Ten Eyck* (1941) 16 Cal.2d 829 [108 P.2d 675]; 4 Witkin, Cal. Procedure (2d ed.) Proceedings Without Trial, § 27, p. 2695; *Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1 [125 Cal.Rptr. 408]; *Lopez* v. *Larson* (1979) 91 Cal.App.3d 383 [153 Cal.Rptr. 912].) The court below correctly believing that its original denial was based on a misreading of *Peery* v. *Superior Court, supra,* 29 Cal.3d 837, was well within its jurisdiction in changing its ruling.

This brings us to the critical issue in these proceedings—the validity of the order to expunge the lis pendens in light of the principles enunciated in *Peery* v. *Superior Court, supra.*

■ The question of whether a lis pendens should be expunged is a matter for the exercise of discretion by the trial court. Hence our scope of review is to determine whether that discretion was abused. (*Sheets* v. *Superior Court* (1978) 86 Cal.App.3d 68 [149 Cal.Rptr. 912]; *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428 [304 P.2d 13].)

■ It appears clear to us that the superior court in expunging the lis pendens was adhering to the guidelines and rationale of the Supreme Court's holding in *Peery* and performed a valid exercise of discretion.

*Peery*, recognizing that the lis pendens is a powerful weapon which is subject to abuse, enunciated the rules applicable in considering a motion to expunge a lis pendens *after* a trial and while the matter is pending on appeal. The thrust of the *Peery* opinion is to place the burden on the losing party to justify the continuance of the lis pendens during the pendency of the appeal and that in determining whether the party appealing is acting in good faith, the merits of the appeal must be assessed by examining the findings of the trial court and the judgment itself.

The issue is not whether the original action was commenced in good faith but whether after suffering an adverse judgment the appeal is in good faith and for a proper purpose.

The *Peery* court 29 Cal.3d at pages 845-846 stated: "The judgment is often accompanied by findings resolving factual disputes that may be relevant to the plaintiff's motives in bringing the suit. For instance, if the trial court has found nonexistent the alleged contract on which the plaintiff bases his claim, the court considering expungement could simplify and expedite its task by adopting that finding as forceful evidence of plaintiff's bad faith in bringing the suit. Findings of fact may be disturbed on appeal only if no substantial evidence supports them. [Citation.] We perceive no reason for courts to ignore that principle when considering section 409.1 motions. Therefore, a relevant finding may be accepted *as conclusive unless the appellant proves that it is subject to substantial challenge on appeal for lack of adequate evidentiary support.*"

In the case at bench, the trial court granted summary judgment for the reason that there was no triable issue of fact and the matter presented only an issue of law which issue was resolved against petitioner.

The trial court's assessment was patently correct. The contract which petitioner seeks to enforce consists of an oral statement by respondent concerning the proposed price of the unit and petitioner's attempt to memorialize it by a written acceptance. Further, the trial court found, correctly in our opinion, that as a matter of law there was no evidence of detrimental reliance by the petitioner which would create an estoppel

against respondent to assert the statute of frauds. Finally, as we have indicated, there exists no writing signed by the respondent which would satisfy the statute. In summary, the trial court's conclusion that there was no enforceable contract is well supported by the record.

That record discloses that pursuant to the requirement of Government Code section 66427.1, respondent notified the tenants of the building, petitioner included, of its intention to convert to condominium ownership. In so doing, it solicited responses from the tenants concerning their interest in purchasing their units at tentatively estimated prices.

There is no evidence in the record to indicate that respondent was making a binding offer to sell at those prices. Since this survey occurred *prior* to the filing of the final tract map, it would have in fact been a misdemeanor violation for respondent to make an offer to sell. (Gov. Code, §§ 66499.30, 66499.31.)

Petitioner's position throughout the proceedings in the superior court was that Government Code section 66427.1, in requiring notice to the tenants of their right of first refusal, does not specifically require that notice be in writing, and that the statute of frauds is inapplicable to the relationship between the tenant and the condominium subdivider.

That, then, is the only basis on which petitioner could hope to prevail on appeal. The issue thus is narrowed to whether that claim can be characterized as "substantial" enough to justify continuance of the burden on the property of the lis pendens.

To recapitulate, the record is quite clear that respondent scrupulously complied with the requirements of Government Code section 66427.1. All of the required notices were given and petitioner was afforded his statutory right to purchase at the terms under which the property was initially offered to the public.

Petitioner simply seeks to obtain the property at a lower price by contending that Government Code section 66427.1 effected a partial repeal of the statute of frauds. We find this argument to be totally lacking in substantiality.

While the prudent subdivider would undoubtedly protect himself against claims of violating the requirements of Government Code sec-

tion 66427.1 by giving the tenants a written notice, the purpose of that notice, whether oral or written, is markedly different than the purpose served by the statute of frauds.

■ Once the tenant is aware of his *right* to purchase at the market terms, and the subdivider respects his obligation not to sell to the public for the prescribed period of time, Government Code section 66427.1 is satisfied. The consummation of the tenant's right, however, must necessarily take the form of a binding contract to sell and purchase real property—a contract which is clearly within the purview of the statute of frauds.

We can conceive of many reasons why an owner of an apartment building would want to survey the tenants to determine the feasibility or the economic soundness of a conversion to condominium ownership before undertaking such a venture. Under such circumstances it seems clear that the owner would not expect to be bound to convert to condominiums and then sell to the tenant at the suggested price if the survey dictated otherwise.

■ The statute is quite clear that the tenant's right of first refusal only arises when the condominium project has been fully approved, the final map recorded and the subdivision public report issued.

Further, since approval of condominium conversions by the governmental entity with the authority to approve such conversions may depend on the status of the housing market in the area, a survey of the tenants' interest in purchasing may be a condition precedent to such approval.

That factor appears to have been recognized by the Legislature in enacting Business and Professions Code section 11010.7, which provides: "The notice of intention specified in Section 11010 [a notice of intention which must be filed with the California Department of Real Estate by anyone seeking to subdivide land] shall not apply to *nonbinding* expressions of intent to purchase or lease which an owner, agent, or subdivider is required to obtain from the tenants of units which are proposed to be converted to a condominium, ... by ordinance, or as a condition to the approval of a tentative or parcel map pursuant to Division 2 (commencing with Section 66410) of Title 7 of the Government Code." (Italics added.)

In our determining that the trial court was correct in holding that petitioner's appeal lacked substantiality it could be argued that we are in effect determining the appeal itself. Perhaps we are. The fact is that we will never know any more about this case than we do at this moment. The facts are in the main undisputed and petitioner's claim has been fully presented both in the trial court and in his petition for the writ.

Finally we observe that petitioner in his declaration presented to the trial court, proclaiming his good faith belief in the merits of his case and denying any improper motive in pursuing the appeal or continuing the lis pendens, narrated a series of personal confrontations that he had with representatives of the respondent.

These confrontations involved disputes over the assignment of parking spaces, mistreatment of petitioner's guests, and various allegations of harassment by respondent's representatives. Whatever might be the merits of petitioner's allegations in this regard they have little to do with the legal issue involved.

Given the fact that petitioner is himself a lawyer, and is presumptively knowledgeable concerning the statute of frauds, his inclusion in the record of these extraneous matters gives rise to a strong inference that his continued attempt to keep the lis pendens alive is motivated by other than a good faith belief in the merits of his position.

The order is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied May 26, 1982, and petitioner's application for a hearing by the Supreme Court was denied July 14, 1982.