OPINION OF THE COURT
Louis D. Laurino, S.
This petition is to compromise a cause of action for the wrongful death of the decedent and to settle the account of the administratrix.
On or about July 7, 1980, the decedent, a construction foreman, while in the employ of the defendants, was fatally injured in an accident on the job site. He never regained consciousness and was pronounced dead at the scene of the accident.
The decedent was survived by his spouse, the administratrix, and four sons, all of whom were minors upon the date of the decedent’s death.
On September 8, 1980 limited letters of administration were issued to the petitioner herein. On or about November 3, 1980 an action to recover for the wrongful death of the decedent was commenced. After completion of all pretrial proceedings, the matter was placed upon the Trial Calendar of the Supreme Court, Bronx County, and on May 28, 1982, jury selection was commenced. On June 2, 1982 a stipulation of settlement was placed on the record of said court. The matter is now before the court for approval *39 of the settlement in accordance with the limitations placed upon the letters of administration issued and for other ancillary relief, primarily the matter of attorneys’ fees.
The settlement in question is one of a “structured” nature wherein the widow petitioner was to receive from the defendants, La Mura Contracting, John Civetta and Sons, Inc., Joint Venture of John Civetta and Sons and La Mura Contracting Company, Inc.; Ramuda Construction Corp. and the City of New York, an up-front payment of $600,000 plus $35,000 per year commencing on June 1, 1983 increasing every five years by $2,500 for up to 20 years and thereafter $45,000 per year for life with payments guaranteed for 20 years. Ernest, the eldest son of the decedent, being 18 years of age upon the death of the decedent, was to receive two payments of $5,000 each. Arnold, 15 years of age upon the death of the decedent, was to receive four annual payments of $5,000 each; Lawrence, 14 years of age upon the death of the decedent, was to receive four annual payments of $5,000; Christopher, 9 years of age at the decedent’s death, was to receive $1,000 per month for 48 months commencing in 1989 plus a payment of $10,000 in 1993. $20,000 in workers’ compensation liens are to be waived.
In addition thereto, payment was to be made by the codefendant Callendar, by his insurer, in the following manner: $100,000 “up front” to the petitioner plus $15,000 per year for her lifetime. Said payments are guaranteed for 20 years and in the event of the death of the petitioner prior to the expiration of the said 20 years the guaranteed payments will be made to her children, now living, per stirpes.
It is patently obvious that the proposed distribution of the proceeds of the settlement was at a most extreme variance with the formula propounded in Matter of Kaiser (198 Misc 582). It has long been the opinion of this court that in matters such as the instant one that the Kaiser formula should be followed except where compelling circumstances are shown for an alternate method of distribution. No such circumstances have been brought forth upon the instant proceeding.
*40 The attorneys for the petitioner seek payment of fees in the amount of $580,000, inclusive of disbursements, out of the up-front moneys. The petitioner and Ernest, the decedent’s adult son, have consented to this fee arrangement.
The guardian ad litem appointed by the court filed certain recommendations which in effect serve as objection to the valuation of the settlement, the attorneys’ fees and the method of distribution set forth in the petition.
At a pretrial conference, a stipulation was entered into whereby it was agreed that the proceeds of the settlement would be distributed in accordance with the Kaiser formula and the matter of attorneys’ fees would be set down for a hearing before the court. The said stipulation was approved by the court by its decision of November 22, 1982.
It is not disputed that the cost of the settlement to the insurer’s involved, inclusive of the up-front moneys paid and the cost of the annuities purchased to provide the payout portion of the structural settlement, is $1,246,578. The total amount of payments projected to be made under the schedule of the settlement submitted amounts to $3,103,000.
The petitioner’s witness, Conrad Berenson, PhD, an economist, stated that the present cash value of the package in his opinion is $1,900,000. This conclusion is reached by discounting the deferred payments at 8% per annum and projecting tax savings by the petitioner over her 40 years of life expectancy. While the court is impressed by Dr. Berenson’s credentials, it cannot, in this age of fluctuating interest rates and changeable tax laws and regulations, base its decision upon his opinion. In the opinion of the court, the present value of the settlement can be calculated solely upon the costs to the defendants (and/or their insurers). Accordingly, the court finds the present value of the settlement to be $1,246,578.
The court is duly impressed by not only the amount of work hours put in by the attorneys for the petitioner but also by the high quality of same.
The substantial amount of this settlement stands as a testament to the exemplary quality of the attorneys’ work and their high state of preparedness to proceed with the *41 trial of the action. It has been conceded, however, that the actual trial of the action never began. No opening was made, no witness was called for either side, no cross-examination was held, no requests to charge were made and of course, the tension-packed hours and perhaps days of awaiting a jury verdict were not experienced. Therefore, the court finds no compelling reason to depart from its prior policy in regard to attorneys’ fees in the matter. The infant distributees, not being party to the retainer agreement entered into by the petitioner and her attorneys are not bound thereby. Conversely, the petitioner and the decedent’s now adult son, by his waiver and consent in these proceedings, are bound by the said retainer.
Accordingly, attorneys’ fees are allowed in regard to that share of the gross settlement proceeds distributable to the decedent’s adult distributees under the Kaiser formula in accordance with the retainer. Attorneys’ fees relevant to that share of the gross settlement proceeds distributable to the decedent’s infant distributees as calculated by the Kaiser formula are allowed in the amount of 25% thereof.
The guardian ad litem for the infant distributees therein has recommended in his report that the attorneys’ fees based upon the present value of the settlement as calculated by the actual cost of the settlement to the defendants’ insurers, be payable out of the “up front” portion of the settlement in one lump sum. Although the adult distributees have consented to and agreed to this arrangement, the court is not bound thereby (see Matter of Meng, 227 NY 264; Matter of Cox v Scott, 10 AD2d 32). For the court to permit such payment would be tantamount to condoning a result in which the attorneys would receive the lion’s share of the moneys immediately available. For example, allowance of the fees in the sum requested by the petitioner’s attorneys would result in the attorneys receiving 82.88% of the up-front portion of the settlement. If the court were to allow attorney’s fees in the amount of one third of the present value of the settlement, as found by the court, the said fee would amount to approximately $415,526 or 59.4% of the up-front moneys available. If the court were to allow attorneys’ fees in accordance with the retainer as to the adult distributees’ shares of the present value as found by *42 the court of the settlement and in the amount of 25% of the infants’ shares of the said value the said fees would amount to some $364,614 or approximately 52% of the up-front moneys available. Such results would be a violation of not only the retainer agreement but also of the guidelines set forth in rule 691.20 (subd [e], pars [1], [2]) of the Rules of the Appellate Division, Second Department (22 NYCRR 691.20 [e] [1], [2]).
In addition thereto, the retainer agreement is silent as to any special agreement to pay attorneys’ fees out of the “up front” portion of a structured settlement and, in light of the actual settlement obtained in this matter, is accordingly ambiguous. Where an agreement for compensation prepared by an attorney is capable of more than one construction it should be construed most strongly in favor of the client (see Matter of Hawke, 148 App Div 326, affd 204 NY 671; Matter of Smith, 11 Misc 2d 170; Matter of Ellis v Mitchell, 193 Misc 956).
While the petitioner and the decedent’s other distributees may, over the years, enjoy the fruits of the annuities purchased by the defendants, they do not and shall not be possessed of the options and control that go hand in hand with outright ownership. The decedent’s distributees cannot use or invest the moneys as they see fit. It is invested by the defendants’ insurers in accordance with their wishes. The future payments which are part of the settlement in question are not immediately available to the decedent’s distributees. They are unable to exercise dominion, control and other indicia of ownership over the future payments and therefore as said future payments, being unreduced to actual ownership, the attorneys’ fees relative thereto should not be receivable prior to the receipt thereof by the decedent’s heirs.
It is the decision of the court that the attorneys’ fees allowed herein shall be payable to the said attorneys upon the receipt of each payment due under the terms of the structured settlement as modified by the stipulation approved on November 22.
The court by allowing the said attorneys’ fees in accordance with this decision to be payable upon the receipt of *43 each payment allows approximately the amount of $204,786.66 as attorneys’ fees on the up-front payment plus their fees of all future payments to be made to the decedent’s heirs for a total of some $907,524.03. This method of allowing attorneys’ fees means that, by comparison to allowing the fees requested by the petitioner’s attorneys, the heirs will receive an additional $375,213.34 up front; or by comparison to allowing the attorneys’ fees at one third of the present value of the settlement, an additional $210,739.34 distributed to the decedent’s heirs up front; and, lastly, in comparison to allowing attorneys’ fees as to the adults’ share in accordance with the retainer and in the amount of 25% of the infant distributive shares, $159,828.34 more of the up-front moneys for present judicious investment to make up for the support lost by the loss of the distributee’s husband, father and bread winner.
In reaching the determination the court finds that the primary purpose and scheme of EPTL 5-4.1 through 5-4.6 is the protection of the distributees who were dependent upon the decedent. If the distributees of the decedent are to receive their shares of the recovery by methods such as that now before the court it is inconceivable that the statutory scheme above mentioned or the interest of justice would be served by the attorneys not receiving their fees on identical terms.
While EPTL 7-4.1 defines an adult as one who has attained the age of 18 years, and section 2 of the Domestic Relations Law as amended by section 1 of chapter 920 of the Laws of 1974 reduced the age of majority from 21 years to 18 years, section 31 of the same Domestic Relations Law defines child as being under 21 years of age. Section 32 of the Domestic Relations Law declares parents liable for the support of their child or children under 21 years of age. Similarly section 413 of the Family Court Act delegates parents to support children under the age of 21 years. Matter of Kaiser (198 Misc 582, supra) similarly predicates its formula upon the obligation to support children until the age of 21. Being mindful of the obligations which have fallen solely upon the petitioner herein for the support of her children until age 21, the court directs that all payments made to the decedent’s infant distributees shall be *44 made to the petitioner as general guardian of said infants jointly with the guardianship clerk of the court until said infants reach the age of 21 years. Said funds shall be thus available for the special needs of said infants should they arise upon petition to and approval of the court pursuant to SCPA article 17.
Had the attorneys for the petitioner, in their pleadings, been prepared to propose and accept a lesser lump-sum fee payable from the up-front moneys available and the payment thereof could be deemed to be beneficial to the attorneys and the heirs of the decedent, the court would have considered carefully such an arrangement.
The court is aware that its decision will result in a diminution of the immediate fees anticipated by the attorneys for the petitioner and that the fee that had been requested was to be inclusive of all disbursements.
The out-of-pocket disbursements made by an attorney, other than normal operating overhead costs, may be refunded to the said attorney out of the gross proceeds of an action. (See Spence v Bode, 57 Misc 611.)
The court invites the petitioner’s attorneys to submit a detailed bill of costs for disbursements made in the matter for its ruling.
The petition is granted upon the terms and conditions hereinabove set forth.
Account settled.