[No. A030640. First Dist., Div. Three. Dec. 22, 1986.]

NATIONAL FOOTBALL LEAGUE PLAYERS' ASSOCIATION et al.,
Plaintiffs and Respondents, v.
NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL et al.,
Defendants and Appellants.

**COUNSEL**

Dummit & Agajanian, R. Mac Prout, Craig S. Dummit and Mark M. Stewart for Defendants and Appellants.

Jeffrey R. Walsh, Henning, Walsh & Ritchie and Henning, Walsh, Thuesen & King for Plaintiffs and Respondents.

OPINION

BARRY-DEAL, J.—The National Football League Management Council (Management Council) and the Los Angeles Raiders, formerly doing business as the Oakland Raiders (Raiders), appeal from the judgment confirming an arbitration award in favor of the National Football League Players' Association (Players' Association) and Dante Pastorini, Jr. (Pastorini). The Raiders and Management Council contend that the arbitrator exceeded his powers (Code Civ. Proc., § 1286.2, subd. (d)) in that he made an error in law by failing to apply the doctrine of mitigation of damages. They further contend that the award violates public policy and that the award was incorrectly calculated. We affirm the judgment.

## I. *Background*

In 1978 Pastorini negotiated a series of six 1-year "NFL Player Contracts" to play football for the Houston Oilers (Oilers). For each of the years in question, 1981, 1982, and 1983, the contracts called for current compensation of $150,000 per year, for a total of $450,000 for the period in question, as well as for deferred compensation. Each contract contained the following provisions: "[24.B.] 2. Despite any contrary language in Paragraph 11, Club shall pay Player the salary specified in Paragraph 5 even if at any subsequent time Player's skill or performance is judged by Club to be unsatisfactory as compared with that of other players competing for positions on Club's roster. [¶] C. The guarantee provided in B above shall in no way affect the operation of the League's waiver system."

Pastorini was traded to the Raiders in March 1980, and the contracts in question were assumed by that team. On September 1, 1981, the Raiders placed Pastorini on waivers and released him in accordance with the provision in his contract because his skill and performance were unsatisfactory. Thereafter, Pastorini demanded that the Raiders pay him the current compensation under his contracts pursuant to paragraph 24.B.2.

Pastorini signed with the Los Angeles Rams (Rams) on September 25, 1981, and was paid $190,000 for the year. The Raiders then informed Pastorini's attorney that the Raiders were no longer obligated to pay Pastorini's salary, because they were entitled to an offset of Pastorini's earn-

ings as a member of the Rams. Pastorini was paid by the Philadelphia Eagles $140,000 for the 1982 season and $175,000 for the 1983 season.[1]

On November 18, 1981, pursuant to the collective bargaining agreement between the Players' Association and the Management Council, the Players' Association and Pastorini filed a noninjury grievance against the Raiders, seeking payment on the 1981 through 1983 contracts. The Raiders responded, contending that the doctrines of mitigation of damages and offset were applicable.

The matter proceeded to arbitration on April 9, 1983. Arbitrator Sam Kagel determined that mitigation and offset were not applicable and directed the Raiders to pay Pastorini as provided in the contracts.

The Raiders failed to comply with the arbitrator's decision, and the Players' Association and Pastorini petitioned the superior court to confirm the arbitration award. The Raiders then petitioned to vacate the award. After a hearing, the arbitration award was confirmed.

## II. *Discussion*

■ Pastorini's dispute with the Raiders clearly falls within the ambit of section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)), which pertains to " '[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. . . .' " (*Dryer* v. *Los Angeles Rams* (1985) 40 Cal.3d 406, 411, fn. omitted [220 Cal.Rptr. 807, 709 p.2d 826].)[2] Therefore, we must apply federal substantive law. (*Ibid.*) However, we may also rely on state law if it is compatible with the purposes of the federal law. (*Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 218 [181 Cal.Rptr. 530].)

### A. *Evidence*

In reaching his award, Arbitrator Kagel considered testimony regarding the NFL's salary offset policy. Joel Bussert, director of personnel for the NFL, testified that the NFL's policy " '. . . was that when a player was

---

[1] Appellants have set out in their opening brief the salary received by Pastorini for the three years in question. These amounts are not challenged by respondents.

[2] It is well settled that the National Football League (NFL) is engaged in interstate commerce. (*Radovich* v. *Nat. Football League* (1957) 352 U.S. 445, 452 [1 L.Ed.2d 456, 461-462, 77 S.Ct. 390]; *Partee* v. *San Diego Chargers Football Co.* (1983) 34 Cal.3d 378, 383 [194 Cal.Rptr. 367, 668 P.2d 674].)

released from a guaranteed contract and signed with a second club, that any amounts earned from that second club would be offset against the guaranteed amounts he was entitled to receive from the first club.' " Bussert conceded that the policy did not exist in writing, had never been communicated to the Players' Association, and did not form part of the collective bargaining agreement.

Arbitrator Kagel also considered two Player-Club Relations Committee (PCRC) decisions, Charles Smith v. Oakland Raiders and San Diego Chargers and Anthony Davis v. Houston Oilers. The arbitrator's decision stated that in the former, Smith had a contract with the Raiders which provided for a guaranteed $45,000 salary for the 1975 season. In mid-September 1975, Smith was released by the Raiders and subsequently signed with the San Diego Chargers (Chargers), with whom he played for five weeks. The Chargers also gave Smith a $15,000 signing bonus. Smith conceded that the Raiders were entitled to offset the $45,000 guaranteed salary by the amount he was paid by the Chargers during his five weeks with that team, but contended that the Raiders could not offset their obligation by the $15,000 signing bonus. The PCRC agreed with Smith, noting that the bonus rider specifically provided that the bonus was not to be deemed part of Smith's salary. Arbitrator Kagel emphasized that following the Smith decision, the NFL distributed to clubs an offset provision which could be negotiated into player contracts.

Arbitrator Kagel also discussed the applicability of Anthony Davis v. Houston Oilers, *supra*. Davis signed a 1979 contract which provided that the Oilers " 'absolutely and unconditionally' " guaranteed payment of half his $80,000 salary if Davis was removed from the club's roster before or during the 1979 season. Davis was waived by the Oilers in November 1978 and signed as a free agent with the Rams, where he played the remainder of the 1978 season. He returned to the Rams in 1979, but was released on September 20, 1979. Davis then requested $40,000 from the Oilers. The Oilers sought to offset the obligation with the salary Davis received from the Rams in 1979. The PCRC held that the contract language guaranteeing payment was " 'clear and unmistakable,' " and that the Oilers were not entitled to an offset.

Here, Arbitrator Kagel concluded that when an offset was intended, specific provisions for offset were inserted into player contracts. Because Pastorini's contract had no such provisions, Arbitrator Kagel determined that mitigation and offset did not apply to Pastorini's case.

### B. *Mitigation of Damages and Offset*

The Raiders argue that the obligation to reimburse for the amount of salary wrongfully withheld may be mitigated by deducting earnings from other employment. (See, e.g., *Mass v. Board of Education* (1964) 61 Cal.2d 612, 627 [39 Cal.Rptr. 39, 394 P.2d 579].) They compare the present controversy to an action for wrongful termination of employment and contend that the measure of recovery therefore is the guaranteed salary, less the amount earned from other employment. (See *Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].)

The arbitrator found that mitigation did not apply to Pastorini's contracts, stating: "That rule is not applicable in the Pastorini case. There is no claim that Pastorini was 'wrongfully discharged.' In fact, Pastorini was not discharged—he was waived, an action *authorized* by the contract. The Raiders had a right to waive Pastorini but it also had an obligation to pay the salaries provided for in the contracts which they assumed from Houston.

"This case does not concern itself with an alleged breach of the contracts between the Raiders and Pastorini at the time of waiver; it is not a case seeking damages; but it is an action on the contracts themselves for the agreed-upon compensation which is set forth in the contracts between the Raiders and Pastorini. What Pastorini is seeking is the payment of a debt owed to him by the Raiders as a result of the contracts and the concept of offset by way of mitigation is not applicable in this instance."[3] (Original italics.) The arbitrator concluded that when an offset was intended, specific language would be included in the contract.

■ In *Evans Products Co. v. Millmen's Union No. 550* (1984) 159 Cal.App.3d 815, 819 [205 Cal.Rptr. 731], citing *George Day Const. v. United Broth. of Carpenters* (9th Cir. 1984) 722 F.2d 1471, 1477, this court stated: " 'Where the decision [of an arbitrator] involves contractual interpretation, we must defer as to any decision which draws its essence from the Agreement. [Citations.] Therefore if on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. [Citation.] This remains so even if the basis for the decision is ambiguous [citations], and notwithstanding the erroneousness of any

---

[3]The Raiders argue that the arbitrator exceeded his powers in making the award because he determined that the issue was not breach of contract and damages, but rather whether the Raiders were entitled to offset Pastorini's salary. The Raiders' defense, however, alleged failure to mitigate damages and right of offset. Thus, the issue before the arbitrator was the right of the Raiders to offset Pastorini's guaranteed contract.

factual findings or legal conclusions, absent a manifest disregard of the law. [Citation.]' "

■ Here, the award represents a plausible interpretation of the contract, and there is no manifest disregard of the law; the arbitrator could plausibly conclude that the parties intended guaranteed, unconditional payment, and that therefore mitigation of damages and offset would not be applied.

■ We would reach the same conclusion under state law. Code of Civil Procedure section 1286.2 provides the following grounds for vacating an arbitration award: "Subject to Section 1286.4, the court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." An error of law is not one of the grounds; however, where an error in law appears on the face of the award and causes substantial injustice, a court may vacate the award. (*Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 771 [137 Cal.Rptr. 580].)

Because the arbitrator's refusal to apply the doctrine of mitigation of damages appears on the face of the award, we will consider whether such refusal amounted to an error of law causing substantial injustice.

The Raiders rely on *de la Falaise* v. *Gaumont-British P. Corp.* (1940) 39 Cal.App.2d 461 [103 P.2d 447] for the proposition that offset should have been applied to the instant facts. In that case, actress Constance Bennett de la Falaise agreed to appear in two motion pictures to be produced by the respondent, a motion picture company. (*Id.,* at p. 463.) The agreement provided, inter alia, for a $30,000 guaranteed advance for each picture. (*Id.,* at p. 464.) The first picture was completed, and de la Falaise was paid pursuant to the contract terms. De la Falaise was never notified of the second picture's starting date, as required by the contract, and the second picture was never made. (*Ibid.*) De la Falaise unsuccessfully sought employment as an actress; she did receive, however, $4,000 for two radio engagements during the period in which the second picture was to have been filmed. (*Id.,* at p. 465.) De la Falaise sought to recover the amount guaran-

teed under the contract (*ibid.*), alleging that the respondent breached the contract by failing to notify her of the second picture's starting date (*id.*, at p. 468). This court found that she was entitled to the guaranteed minimum, less the $4,000 she received from the radio engagements. (*Id.*, at pp. 469-470.) The court noted that where an employee has been wrongfully discharged, the measure of damages is the amount of salary agreed upon, less the amount which the employee has earned or with a reasonable effort might have earned. (*Id.*, at p. 469.)

The instant case does not involve wrongful discharge of employment; Pastorini was waived, an action *authorized* by his contract. Therefore, the offset provisions of *de la Falaise* are inapplicable.

Pastorini relies on *Payne* v. *Pathe Studios, Inc.* (1935) 6 Cal.App.2d 136 [44 P.2d 598] for the proposition that offset is inapplicable in the instant action. In that case, the plaintiff's assignor, Zazu Pitts, contracted with the defendant motion picture company to act in a motion picture. (*Id.*, at p. 138.) The company was to employ Pitts for at least four weeks. (*Ibid.*) A clause in the contract provided that " 'It is understood and agreed that in the event your services are not started on or before December 31, 1930, we hereby agree to pay you the sum of Five Thousand Dollars ($5000), which represents the four weeks guarantee on this agreement.' " (*Ibid.*) Zazu Pitts's services were never requested, and her assignee sued to recover the guaranteed $5,000. (*Id.*, at p. 140.) The movie studio argued that Pitts had a duty to mitigate damages by securing other employment. (*Id.*, at p. 142.) This court, after determining that plaintiff's assignor had not been discharged (*id.*, at p. 141), stated: "[T]he rule as to mitigation of damages in cases of contracts of hire does not apply to contracts not requiring all or the greater portion of the time of the party employed, or which do not preclude the party from undertaking and being engaged in the performance contemporaneously of other contracts. [Citation.] Here again we must bear in mind that this is not an action for damages for breach of the contract of employment, but an action on the contract itself for the agreed compensation. The doctrine of mitigation of damages has no place in such an action." (*Id.*, at p. 142.)

Unlike Pitts, Pastorini was under an exclusive services contract to the Raiders. Consequently, he cannot rely on the doctrine stated in the above cited case.

Nevertheless, we conclude that offset is inapplicable in the instant case and that the arbitrator did not make an error in law. Paragraph 24.B. provided that Pastorini would be paid if his performance was unsatisfac-

tory, i.e., even if he did not play. Paragraph 24.C. referred to this provision as a "guarantee" and stated that it did not affect the waiver system. The evidence clearly reveals that when offset was intended, a special provision was inserted into the contract. Bussert testified that the NFL's alleged custom and practice regarding offset was not communicated to the Players' Association and did not constitute part of the collective bargaining agreement. This court may reverse the arbitrator's award only if there is a manifest disregard of the agreement, totally unsupported by principles of contract construction. (See *Safeway Stores, Inc.* v. *Brotherhood of Teamsters* (1978) 83 Cal.App.3d 430, 437 [147 Cal.Rptr. 835].) No such manifest disregard appears in the instant case.

## C. *Public Policy*

We cannot agree with the Raiders' contention that Pastorini was unjustly enriched and that the award therefore violates public policy. The contracts guaranteed Pastorini's salary even if his skill or performance was unsatisfactory. They contained no provision for offset in the event that Pastorini was waived. There was no unjust enrichment at the Raiders' expense, because Pastorini fully performed under the contracts with that team.

## D. *Effect of Players' Strike on Award*

The Raiders assert that Pastorini's 1982 contract award must be reduced by seven-sixteenths, as mandated by the agreement settling the Players' Association strike. Because the Raiders did not raise this issue below, it was not addressed by the arbitrator or by the court. Arbitrator Kagel did not address it. Therefore, assuming arguendo that this reduction may have been appropriate, such error is not cognizable on appeal. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321.)

## III. *Conclusion*

The judgment is affirmed.

Scott, Acting P. J., and Merrill, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 11, 1987.