[No. D007543. Fourth Dist., Div. One. Nov. 21, 1989.]

JACOB SCHNEIDER, a Minor, etc., et al., Plaintiffs and Respondents, v.
KAISER FOUNDATION HOSPITALS et al., Defendants and Respondents;
FRIEDMAN, COLLARD & POSWALL, Movant and Appellant.

COUNSEL

Allan J. Owen, Morton L. Friedman and Friedman, Collard & Poswall for Movant and Appellant.

Allan Lame for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

OPINION

**WIENER, Acting P. J.**—Business and Professions Code section 6146[1] enacted as a part of the Medical Injury Compensation Reform Act of 1975 (MICRA) limits the amount of fees an attorney may obtain in a medical malpractice action when representing a party on a contingency fee basis. If periodic payments are awarded to the plaintiff under section 667.7 of the Code of Civil Procedure, section 6416 (b) requires the court to determine the "total value" of such payments based upon the projected life expectancy of the plaintiff and to use this amount to compute the total award from which attorney's fees are to be calculated. The principal issue here is whether the "total value" of periodic payments means the arithmetic sum of all payments required by the award, i.e., the award's face value or the present value of the stream of future payments. For the reasons set forth below we decide the value of an award of periodic payments for the purpose of calculating a contingent attorney's fee is the *present* value of the periodic payments, normally best represented by the cost of the annuity purchased to fund the payments. We also hold a plaintiff's attorney discharged before the court makes this determination has standing to participate at the hearing to establish the award's value.

---

[1] All statutory references are to the Business and Professions Code unless otherwise specified. When referring to statutory subparts in this and other codes we omit repetition of the word "subdivision."

Section 6146(a) at the time of this case provided in relevant part that "[a]n attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits: [¶] (1) Forty percent of the first fifty thousand dollars ($50,000), recovered. [¶] (2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered. [¶] (3) Twenty-five percent of the next one hundred thousand dollars ($100,000) recovered. [¶] (4) Ten percent of any amount on which the recovery exceeds two hundred thousand dollars ($200,000). [¶] Such limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind."

The present statute is somewhat more generous.

## I

The questions presented in this appeal arise from a series of rather unusual procedural events occurring over a substantial period of time. ▉ ▉ ▉ ▉ We recite that history for the sole purpose of presenting the issues before us.[2]

Plaintiffs Marcia and Randy Schneider on behalf of their minor son, Jacob, sought to recover damages due to the negligence of defendant Kaiser Foundation Hospitals at and following Jacob's birth. Pursuant to a contract between the Schneiders and Kaiser, their dispute was submitted to binding arbitration. An arbitration panel awarded Jacob $3,624,000: (1) a $1 million lump sum payment; and (2) $2,624,000 in periodic payments pursuant to a purchased annuity at a rate of $3,650 per month until Jacob's death or the fund is exhausted, whichever occurs first.

At the time of the arbitration award, the Schneiders were represented by Attorney Morton L. Friedman and the firm of Friedman, Collard & Poswall (collectively Friedman). Following receipt of the award, Friedman requested a further hearing before the arbitration panel to clarify, among other things, the total value of the award for the purpose of calculating his contingent fee. As a result of that hearing, the panel amended the award to specify that the sum of $3,624,000 "is the total value of payments for purposes of computing fees."

---

[2]Pursuant to Evidence Code section 452(d), we have taken judicial notice of the superior court file in this case, much of which was included as part of the record in a related appeal before this court (*Schneider* v. *Kaiser Foundation Hospitals*, D007880). We recognize that Evidence Code section 459(c) requires a reviewing court to notify the parties of significant material it intends to judicially notice. The rationale for this requirement, similiar to that underlying Government Code section 68081, is to assure that the parties have the opportunity to present relevant argument to the court based on a fair understanding of the facts and issues which will serve as the foundation for the court's decision.

Here, Friedman in his reply brief objected to the Schneiders' reference to documents outside the formal record and moved to strike those references. In a technical sense, we could and perhaps should have formally denied the motion to strike on the ground that we intended to take judicial notice of the superior court record. We have concluded, however, that such formality is unnecessary where Friedman already fully raised his objections to the consideration of material outside the record, objections we found either unnecessary or demonstrably nonsubstantive and unpersuasive. In addition, our comments at oral argument adequately apprised counsel that we were considering the entire lower court record.

Friedman also objects to our consideration of the superior court file because it contains facts which he did not have the opportunity to contest in the lower court. The only "fact" of significance in this regard is the cost of the annuity to Kaiser, a fact which was established by Kaiser documents and which Friedman has never suggested is inaccurate. Moreover, the fact that Friedman has standing to object to the court's vacating or correcting a portion of the arbitrators' award dealing with the calculation of attorneys' fees (see *post,* pp. 1316-1317) does not mean he can contest the contents of a record made after he was discharged by the plaintiffs. In that sense, he is obligated to take the record as he finds it.

Friedman then petitioned the court to confirm the amended arbitrators' award. Before the petition could be heard, the Schneiders discharged Friedman and retained new counsel who moved to vacate the amended award and to confirm the original award. Friedman appeared at the hearing and successfully argued in favor of confirming the amended award.

Several weeks later, however, following the filing of papers concerning the propriety of the court's awarding fees and costs to Friedman, the court entered an order stating that Friedman lacked standing to argue the question of attorney's fees. The Schneiders sought reconsideration of the court's earlier order amending the award after which the court vacated the amended award and confirmed the original based on its inherent power to correct erroneous rulings. (See *Greenberg* v. *Superior Court* (1982) 131 Cal.App.3d 441, 445 [182 Cal.Rptr. 466].)

Friedman moved to vacate the judgment confirming the original award. In the ensuing hearing, consolidated with the evidentiary hearing on the Schneiders' request for a determination that Kaiser had not complied with the arbitrators' award, the court denied Friedman's motion and imposed sanctions of $1,000 against him pursuant to Code of Civil Procedure section 128.5 on the ground Friedman had no standing to bring the motion to vacate. Friedman appeals this order.

## II

We first address the standing issue.

■ The Schneiders answer Friedman's claim that he has standing by directing us to *Fracasse* v. *Brent* (1972) 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9] as indicating that a client may discharge an attorney retained on a contingent fee basis at any point in the case, subject only to the client's obligation to compensate the attorney for the reasonable value of any services rendered. (*Id.* at pp. 790-791.) The Schneiders' argument is valid only if the attorney's quantum meruit compensation were calculated without reference to the total value of the award eventually recovered by the plaintiff. As *Fracasse* makes clear, however, an attorney discharged shortly before the conclusion of a case may be able to assert entitlement to the entire contingent fee as the appropriate quantum meruit recovery. (*Id.* at p. 791.) Moreover, as explained in *Cazares* v. *Saenz* (1989) 208 Cal.App.3d 279 [256 Cal.Rptr. 209], the appropriate quantum meruit recovery for an attorney discharged even at an earlier point in the proceedings may be measured by a percentage of the originally agreed-upon contingent fee. (*Id.* at pp. 288-289.) Obviously in such circumstances, the attorney with a substantial interest in the proper calculation of the total award from which his fee is

calculated has standing. Because the court's decision to award sanctions against Friedman was based on its determination that he did not have standing, we strike the order.

## III

■ ■■ ■■ ■ His standing established, Friedman argues the court's order vacating the amended arbitration award and confirming the original award was unauthorized, claiming the court's power to vacate or correct an arbitration award is strictly limited and does not extend to areas of law of the sort allegedly involved in this case.[3] Friedman is correct in saying that a trial court's power to vacate or correct an arbitration award is limited. Code of Civil Procedure section 1286.2(d) provides that an award may be vacated if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision . . . ." Correspondingly, section 1286.6(b) provides that an award may be corrected if "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; . . ."

■ In a series of cases interpreting these two sections, the courts of appeal have concluded that a trial court may vacate or correct an arbitration award due to an error of law where such error appears on the face of the award. (See, e.g., *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 770-771 [137 Cal.Rptr. 580]; *Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 529 [176 Cal.Rptr. 17]; *National Football League Players' Assn.* v. *National Football League Management Council* (1986) 188 Cal.App.3d 192, 199 [233 Cal.Rptr. 147].) Here, if the arbitrators' selection of $3,624,000 as the value of the award for the purpose of calculating Friedman's fee is legally erroneous, it is an error which is manifest on the face of the arbitration award and the court had the power to correct it. Thus the basic question before us is how a court should establish the value of an award for purposes of calculating attorney's fees under section 6146(b).

Whether the "total value" of periodic payments under section 6146(b) means the arithmetic sum of all payments to be received or the present value of the stream of future payments is a question of law which, to our

---

[3] Our resolution of this case reflects our rejection of the Schneiders' contention that the arbitrators lacked authority to correct their original award. When a case of this nature is submitted to arbitration, the arbitrators should comply with the mandate of Business and Professions Code section 6146(b) and place a total value of the award for the purposes of calculating the attorney's contingent fee. In a technical sense their doing so here resulted in an "amended" award, even though nothing was changed in the award itself. Because the arbitrator's responsibilities included making this determination they were authorized to do so after rendering their initial award.

knowledge, has yet to be answered by any California court. The reason may simply be the fortuity of the common law process. Case-by-case adjudication of legal issues presupposes that some questions will take longer to reach the appellate courts than others. Alternatively, the absence of appellate authority may only reflect that in the marketplace the answer is well known to experienced practitioners and courts, with virtual unanimity among them that the manner of calculating attorney's fees under section 6146(b) is to determine the present value of the stream of future payments. The Schneiders impliedly say the latter is true, asserting that before they discharged Friedman they "checked with two medical malpractice attorneys in San Diego to see how they computed their fees when periodic payments were involved, [and] found that they . . . based their fee upon the present cash value of the stream of payments, rather than on the lump sum award." That this may be the accepted manner of setting contingent fees in this type of case is not surprising in light of the apparent unanimity in the literature on this subject. For example, in a recent issue of the California Lawyer, the rule is categorically stated as follows: "If the structured settlement annuity is purchased from a third party insurance company, attorney's fees should be based on the cost of the annuity to the defendant. The cost of the annuity is simply what the insurance company spent to purchase it. Any other method of calculation, such as the annuity's hypothetical present value, would produce attorney's fees probably considered excessive under rule 2-107, ABA Model Rule 1.5 and DR2-106 of the ABA Code."[4] (Meyer, *Settling In Your Client's Interest* (July 1988) Cal.Law., 53 at p. 55.)

Although the foregoing refers to a "structured settlement," there is no meaningful difference between the determination of a contingent fee in that context and an award of periodic payments such as occurred here. The limitations of attorney's fees under section 6146(a) applies "regardless of whether the recovery is by settlement, arbitration or judgment . . ." (See fn. 1, *ante.*) Moreover, we are unable to discern any rational basis—and none has been suggested to us—to distinguish between payments which follow a "structured settlement" and those that are the result of an award of periodic payments.

Interestingly, in spite of Friedman's energetic arguments that the court was powerless to change the arbitrators' award, he has not referred us to any case or article supporting his claim that his attorney's fees should be based on the face value of the award. When the difference in computing

---

[4] Effective May 27, 1989, former rule 2-107 of the California Rules of Professional Conduct was amended. It is now contained in rule 4-200. That rule prohibits a member from entering into an agreement for charging or collecting an unconscionable fee. Included among the 11 factors to be considered to determine the conscionability of the fee is whether "the amount of the fee [is] in proportion to the value of the services performed."

value can result in such a vast disparity in the amount of attorney's fee to be recovered, here for example, about $200,000,[5] one would think there would be considerable literature or legislative history in support of Friedman's argument. Indeed the contrary is true.

Equating the term "structured settlement" with any plan to pay damages on a deferred schedule, a recent comprehensive article on the subject states: "Case law and statutes point towards an evaluation [of the structured settlement] based on the cost to the defendant-insuror as the proper basis for the fee. Any attempt to discount a total payment of deferred payments should try to reach this equivalent value." (Comment, *Computation of Attorney Fees in Structured Settlements: A Search for Basis* (1985) 14 Cap. U.L. Rev. 567, 603.) Another commentator similarly concludes that attorney's fees ". . . should be based on the true value of the total settlement and not on the total amount of all payments, current and future." (Krause, *Structured Settlements for Tort Victims* (1980) 66 A.B.A. J. 1527, 1528-1529; see also Mangelsdorf, *Structured Settlements in Review: The Fundamental Concept* (1981) 4 Amer. J. Trial Advoc. 559.) While these last two articles recognize there may be valuation considerations other than the annuity's cost,[6] we think the cost approach with its simplicity of application and avoidance of risk inherent in evaluating subjective factors is the preferable approach. There is nothing to be gained by adding uncertainty and contentiousness to the calculation of the attorney's fee when such calculation will invariably result in a greater fee in circumstances when a lesser fee is reasonable.

The courts in various states which have addressed this issue have also uniformly concluded the value of a periodic payment settlement for the purpose of calculating a contingent attorney's fee is the present value of the periodic payments, which is normally best represented by the cost of the annuity purchased to fund the payments. (See *Merendino* v. *FMC Corp.* (1981) 181 N.J.Super. 503 [438 A.2d 365, 368]; *Tobias* v. *Autore* (1982) 182 N.J. 328 [440 A.2d 1171, 1173]; *Matter of Estate of Muccini* (1983) 118 Misc.2d 38 [460 N.Y.S.2d 680, 682]; *Johnson* v. *Sears, Roebuck & Co.* (1981) 291 Pa.Super. 625 [436 A.2d 675, 678]; *Perez* v. *Pappas* (1983) 98 Wn.2d 835 [659 P.2d 475, 478, fn. 1].)

In addition to the foregoing authorities, the notion of a contingent fee paid forthwith to an attorney based on the sum of future payments to the

---

[5] Applying the percentages set out in footnote 1, *ante,* the attorney's fees based on a value of $3,624,000 is approximately $400,000. Computed on the basis of the present value of the future stream of payments the fee is approximately $200,000.

[6] These considerations are (1) the current available long term interest rates; (2) the tax free aspect of future payments; and (3) the management free aspect of the entire settlement. (See, e.g., Mangelsdorf, *op. cit. supra,* at p. 564.)

attorney's client is inherently contradictory. A contingent fee contemplates the lawyer will receive a fee based upon what the client actually receives or the present value of what the client will receive. Here for example, it would be reasonable for Friedman to receive a fee based on the up front cash of $1 million and a statutorily authorized percentage of each monthly installment paid to Jacob. In such circumstances he would be subjecting himself to the potential risk that his fees would terminate on Jacob's death. Friedman has not requested, however, that his fee be paid in this manner. He wants the economic benefit which accompanies the certainty of payment while avoiding the loss of such benefit which accompanies conditional payment. It does not require great financial sophistication to appreciate that the value of a 60-year annuity paying $3,650 monthly is far less than the forthwith payment of $2,624,000, the sum total of all the monthly payments. ■ We would be violating the legislative mandate of section 6146 if we were to validate an attorney's fee based on the face value of an award when the client receives a lesser value tied to the cost of obtaining a stream of payments distributed over a substantial period of time.

■ We therefore hold the arbitrators erred in amending the award to reflect that $3,624,000 is "the total value of payments for the purposes of computing fees" and the trial court correctly vacated the amended award by deleting that valuation.[7] In these circumstances, the court should have gone further, however, and under section 6146(b) determined the award's total value. Here, because the cost of the annuity is established beyond dispute on this record, the trial court should have corrected the award under Code of Civil Procedure section 1286.6(b) to reflect the award's total value of $1,513,631.06 from which attorney's fees should be calculated.[8]

[7] Disputing this conclusion in his petition for rehearing, Friedman argues that even assuming the correctness of our analysis, either one of two errors may have occurred, including the possibility that the total arbitrators' award should have been increased by an appropriate amount of interest on each of the monthly payments of $3,650. Accordingly, he asserts, the award should be vacated and the matter remanded to the arbitration panel for a redetermination of the award.

It seems plain to us that the intent of the arbitrators was to award Jacob $3,650 per month for his life expectancy, which would not justify any augmentation for interest. Interest is only awardable to compensate for a delay in payment and compensation for future needs involves no such delay. In any event, Friedman ignores the fact that the legal principles he has so vigorously argued to us as limiting the power of courts to vacate arbitration awards (see *ante*, p. 1317) preclude us from even considering whether the arbitrators may have made a mistake in calculating the amount of the award. We must therefore assume that the award itself represents an accurate calculation of the amount of damages found by the arbitrators. With that as a basis, the only issue before us is the legal question whether the total value for the purpose of attorneys' fees was correctly stated. As we have explained, it was not and this error justifies correction of the award.

[8] We wish to stress that our decision rejecting Friedman's request for an attorney's fee calculated on the face amount of the award should not be construed as a personal criticism of him or of his professional skills. The record in this case reflects Friedman's conscientious and

## Disposition

The judgment is reversed with directions to correct the arbitration award to state a total value of $1,513,631.06 and, as so corrected, to confirm the award and for such further proceedings as may be necessary, consistent with this opinion. The order awarding sanctions is stricken. The parties to bear their respective costs for this appeal.

Work, J., and Froehlich, J., concurred.

A petition for a rehearing was denied December 15, 1989, and appellant's petition for review by the Supreme Court was denied February 15, 1990.

---

capable advocacy for Jacob resulting in a substantial award. This is not a case in which a lawyer has sought a fee in excess of the limitations provided by statute. (See *Fineberg* v. *Harney & Moore* (1989) 207 Cal.App.3d 1049 [255 Cal.Rptr. 299]; *Shepherd* v. *Green* (1986) 185 Cal.App.3d 989 [230 Cal.Rptr. 233].) In addition one must appreciate that the "reasonableness" of attorney's fees is affected by a number of factors including the Legislature's attitude during a specific legislative session. For example, the recent amendments increasing the statutory percentages to be used to calculate attorney's fees results in a fee which before the amendment would have been unlawful, i.e. unreasonable. It is also significant that before the enactment of MICRA, courts generally approved contingent fees for professional services rendered on behalf of minors in cases such as the one before us on the basis of 25 percent of the recovery. Here the award of such a fee would substantially exceed that to which Friedman contends he is entitled. The point we wish to make is that as a result of legislative action, what is "reasonable" one year can become "unreasonable" the next.