[Civ. No. 14281.   First Dist., Div. One.   July 26, 1950.]

REMILLARD BRICK COMPANY (a Corporation) etc., Appellant, v. A. O. DANDINI et al., Respondents.

Johnson, Harmon, Stirrat & Henderson for Appellant.

Leo R. Friedman and Eugene K. Sturgis for Respondents.

SCHOTTKY, J., pro tem.—This is an appeal from an order of the superior court denying the motion of plaintiff and appellant to set aside a satisfaction of judgment. The judgment was entered on October 14, 1943, an amendment thereto was entered on November 2, 1943, and the satisfaction of judgment was filed on February 3, 1948, pursuant to a resolution of the board of directors authorizing its entry. The action in which the judgment had been entered was a derivative suit filed by plaintiff Remillard Brick Company, a stockholder in the Remillard-Dandini Company, and the judgment was given in favor of the Remillard-Dandini Company against its president and manager, A. O. Dandini.

Appellant has also filed under rule 23 (b) an application for leave to produce additional evidence before this court, which application was argued concurrently with the hearing on the merits and ordered submitted at the same time. We have considered said application and have concluded that the instant case is not one in which such an application should be granted, and the said application for leave to produce additional testimony is therefore denied.

The motion to set aside the satisfaction of judgment was made on the grounds that the satisfaction was obtained by fraud and collusion, was without consideration, was voluntary, was against the interests of the defendant Remillard-Dandini Company, and was being sought for the purpose of abandoning the rights and interests of the company in the creditors' suit for collection of the judgment then pending in action Number 196,654.

On appeal it is contended by the appellant that the order of the lower court refusing to set aside the satisfaction of judgment should be reversed on the grounds that it was a fraud upon the company perpetrated by the majority directors in that: (1) It was an attempted dismissal of the creditors' (minority shareholder's) suit to collect the judgment in the company's favor, and was against the best interest of the company; that A. O. Dandini's right to credits under the 1935

contract was not adjudicated in the earlier fraud action; that that question is not now res judicata; and (2) the satisfaction was without consideration.

Before discussing the points raised on this appeal we shall summarize briefly the factual situation as disclosed by the record. Other background facts are set forth in *Dandini* v. *Dandini*, 82 Cal.App.2d 263 [186 P.2d 41], involving some of the same parties, and, to some extent, the same basic transactions here involved. In that action this court affirmed a judgment in favor of defendant A. O. Dandini in a suit to annul an assignment by him of 253 shares of Remillard-Dandini Company stock.

Originally the Remillard Brick Company (Lillian Remillard Dandini) owned one-half, or 150 shares, of the stock of the Remillard-Dandini Company (hereinafter referred to as the "company"). The defendant A. O. Dandini was given the other one-half of the stock at the time the company was organized. A contract was also executed at that time (1935) whereby A. O. Dandini was to be the president and manager of the company for five years, at a compensation of $300 per month, plus a commission. The contract provided:

"(1) The company will employ the manager to manage generally its business, subject only to the control of the Board of Directors, for the period beginning July 1, 1935, and ending June 30, 1939, and will pay to the said manager the sum of Three Hundred Dollars ($300.00) per month and will credit to the account of the manager each month an amount equal to seventy-five cents per thousand of brick sold, such payment and credit being in full compensation for services to be rendered consequent upon such employment.

"(2) The manager accepts such employment and will well and faithfully serve the company in the capacity of general manager during the period and for the compensation hereinbefore specified. . . .

"(5) The compensation hereinbefore provided of seventy-five cents per thousand is to be credited to the account of the manager on the books of the company but no such credits shall be payable to the manager, nor shall there be any payments on account of such credits, at any time that the company is in arrears in payments to its creditors or if the making of payments on account of such credits shall reasonably jeopardize the ability of the company to meet its debts and obligations as they fall due."

A similar contract was entered into on July 1, 1939, with the amounts changed to $400 and fifty cents respectively, and to run for five years.

On August 18, 1939, a complaint was filed by the plaintiff as a shareholder in the company against A. O. Dandini, Tobin, Caneli, and Costa, the then directors of the company, and against the company, to recover certain sums of money from the defendants based (1) upon the alleged misappropriations of funds by A. O. Dandini, and (2) to set aside as fraudulent, certain stock issued to Dandini. The fourth amended complaint, on which the case was tried, alleged misappropriations by Dandini from 1935 through August, 1939; that such misappropriations were continuing; and that the defendant directors were grossly negligent in their duties in not ascertaining or preventing the misappropriations and in voting for the 1939 contract. The third cause of action alleged that the defendants issued to Dandini 100 shares of the capital stock of the company without consideration, and that such was a fraud upon the company in that the stock was issued to Dandini in payment of amounts claimed due him under the contract and it was represented to the Corporation Commissioner that there "was due and owing" by the company to Dandini such sums, and that the issuance of the stock to him would be a convenient way of discharging such obligation, when actually the defendants knew that the company was in arrears in payments to its creditors and that such sums were therefore not then payable, and that the company was thereby damaged in the sum of $10,000.

The court at the trial of this fraud action found and concluded the contracts to be as alleged; that Dandini served as general manager of the company from July 1, 1934, to August 1, 1942; "That commencing on or about September 9, 1935, while said A. O. Dandini was acting as manager of Remillard-Dandini Company under the contract dated September 12, 1935, as hereinabove set out in full, and while he was serving as a director, president and manager of the Remillard-Dandini Company, said A. O. Dandini, in violation of his duties as manager, president and director of said company misappropriated and converted to his own use the funds and assets of the Remillard-Dandini Company in the sum of $51,404.04; that $8,004.89 of said $51,404.04 was so misappropriated and converted by said A. O. Dandini prior to August 18, 1936, and is barred by Section 338, Subdivision 4 of the Code of Civil Procedure [statute of limitations]; that

the remainder of said sum, to wit, $43,399.55 was so misappropriated and converted by A. O. Dandini after August 18, 1936; that of said $51,404.04 so misappropriated by A. O. Dandini $37,781.31 thereof was so misappropriated prior to August 1, 1939, and $13,619.73 misappropriated from August 1, 1939 to July 8, 1942.''

The trial court in the fraud action found that the 1939 contract had been entered into by the directors after a warning by Lillian R. Dandini of the misappropriations, that the directors knew or should have known of them, that entering into the contract was gross and wilful negligence and a fraud on the company, and that Dandini was entitled only to the reasonable value of his services ($400 per month) after August 1, 1939. As to the third count of the complaint the court found that under the 1935 contract and up to December 31, 1938, the credits of Dandini amounted to $38,399, and that by contract of February 14, 1939, Dandini was given and accepted 100 shares of the value of $10,000 in satisfaction of such claim. The contract was entered into by the company at a board of directors meeting at which Lillian Dandini was not present, and was voted on by Caneli, Costa and Tobin. After receiving the authorization of the Division of Corporations the 100 shares were issued for a purported claim of $43,099 ($4,700 interest) when actually ''none of said $38,-399.00 was due or payable to A. O. Dandini and it was not at said time ascertained if it would ever be due or payable to him, that none of said alleged interest was due or payable either on a contingent basis or otherwise.''

The court also found that ''. . . the issuance of said shares of stock to A. O. Dandini was a fraud upon said Remillard Dandini Company and should be annulled . . . and the said compromise being ordered to be annulled, said credits are ordered to be replaced on said books, said credits being in the sum of $38,399.11 . . .''

The court then found that such stock had been transferred by A. O. Dandini to third persons who were not represented in that suit and therefore the bona fides of the transfer was not adjudicated in that suit. The court directed that $10,000 for attorneys' fees and $1,800 expended for an audit of the Remillard-Dandini Company books by the brick company were to be paid out of the money recovered from A. O. Dandini.

Thus under the judgment of October 14, 1943, and the amendments thereto of November 2, 1943, Dandini was to pay

to the company $43,399.55 and return the 100 shares of stock or pay $10,000 additional, their reasonable value. Interest of seven per cent was to run from the date of judgment and the contingent credits of $38,399.11 which arose under the 1935 contract were to be set up again on the books in favor of A. O. Dandini, ". . . but whenever the conditions specified in the contract of September 12, 1935, have arisen making the payment of said credits due and payable to the said A. O. Dandini the Remillard Dandini Company shall not be required to pay said credits to the said A. O. Dandini so long as any portion of the judgment herein in favor of the Remillard Dandini Company and against A. O. Dandini remains unpaid and in such event the Remillard Dandini Company shall have the right to retain as part or full payment of said judgment the amount of credits equal to the unpaid portion of said judgment."

A creditors' suit was instituted by the plaintiff in August, 1946, to enforce the collection of the judgment against Dandini. This action was to be set for trial on February 9, 1948. However, at a special meeting of the board of directors of the company held on January 29, 1948, a resolution was passed by which the judgment indebtedness of Dandini was offset against the credits on the books of the company in Dandini's favor. This resolution was entered February 2, 1948, as a satisfaction of judgment. Notice of motion to strike such satisfaction of judgment was filed by plaintiff February 6, 1948, and was submitted without argument. The motion was denied, and plaintiff appeals.

 It is, of course, the law that a satisfaction of judgment which has been filed and entered may be set aside by appropriate proceedings and for proper cause. (15 Cal.Jur. 273; 51 A.L.R. 243; *Brochier* v. *Brochier*, 17 Cal.2d 822 [112 P.2d 602].)  Fraud, undue influence and mistake are the generally recognized grounds for vacating a satisfaction of judgment.

Appellant contends that it should be vacated because it was an attempt by the directors to dismiss a creditors' (minority shareholder's) suit (Action No. 196654) in which the appealing plaintiff seeks to subject the majority shares of stock in the company to satisfaction of the judgment in the fraud action, and that the majority directors are thus seeking to eliminate the creditors' suit and oust the court of jurisdiction to hear and determine the claim and right of Dandini. It alleges that "If their action is sustained, it would amount to the scrapping of all the well-settled law which entitled

a minority stockholder to sue on behalf of the corporation when the majority directors are hostile to the corporation and refuse to act.'' Respondents in reply argue that the creditors' suit depended upon whether Dandini was indebted to the company, and that if a satisfaction of judgment was properly entered it is immaterial whether or not it defeated the creditors' suit. We do not believe that the pendency of the creditors' suit would affect the question of whether or not the satisfaction of judgment was properly entered.

Appellant contends also that, under section 820 of the Corporations Code, which provides that ''Directors and officers shall exercise their powers in good faith, and with a view to the interests of the corporation,'' the trustee relationship was violated by action of respondents, in causing the satisfaction to be entered.

Appellant contends further that the satisfaction of judgment was entered without consideration. Lack of consideration may be ground for vacating a satisfaction of judgment in some jurisdictions (51 A.L.R. 243) but in California it would seem that more must appear than lack of consideration alone. In *Dern* v. *Dein*, 57 Cal.App. 611, 613 [207 P. 914], the court said: ''. . . but even if it were true that the satisfaction was entered without consideration, we do not understand that that fact alone requires the court on motion to set the satisfaction aside. The law does not invite litigation or encourage it to be continued, and a judgment creditor may terminate it by filing a satisfaction in the manner prescribed in section 675 of the Code of Civil Procedure.''

However, it would appear to us that the chief question to be answered in the instant case is whether or not there is sufficient evidence to sustain the order of the trial court denying the motion to set aside the satisfaction of judgment. The trial court in denying said motion impliedly found that the action of the majority directors was neither fraudulent nor without consideration. The trial court placed a construction upon the actions and motives of respondents contrary to that appellant seeks to have us place upon them. Under well-established appellate procedure, unless the evidence and all inferences which may reasonably be deduced therefrom fail to support the conclusion of the trial court, we must affirm the order.

In the January 29, 1948, resolution of the board of directors of the company is set forth the items cancelled against each

other to arrive at the satisfaction of the judgment rendered against Dandini. Briefly, the amounts are as follows:

### Dandini Owed to the Company

| | |
|---|---|
| $43,399.55 | The amount of the judgment in the fraud action against Dandini for misappropriations. |
| 10,000.00 | The amount to be returned to the company by Dandini in lieu of the 100 shares of stock wrongfully issued to him. |
| 14,331.08 | Interest on the judgment. |
| 151.95 | Costs allowed in the judgment. |
| 45.20 | Interest on the allowed costs. |
| 2,178.33 | Owed by Dandini to the company on open account receivable (personal advances made in Dandini's behalf by the company). Note: No interest was charged Dandini by the company on this amount. |
| $70,106.11 | Total owed company by Dandini. |

*Amounts Set Off by the Company in Arriving at Satisfaction.*

| | |
|---|---|
| $ 100.00 | Value of one share of stock returned (in addition to the 100 improperly issued). |
| 550.00 | Paid by respondent Costa. |
| 11,000.00 | Result of levy on San Jose property of Dandini. |
| 2,000.00 | Result of levy on Berkeley property of Dandini. |
| 38,399.11 | Amount of credit restored to Dandini on the books under the fraud action judgment. |
| 4,756.16 | Additional credits alleged due to Dandini under the 1935 contract and accruing after January 1, 1939. |
| 10,995.72 | Interest on the credits due Dandini, from November 2, 1943, to February 1, 1948. |
| 126.78 | Cash paid by Dandini as balance due on judgment. |
| 2,178.33 | Cash paid as due on the open account receivable. |
| $70,106.10 | Total received in alleged satisfaction of judgment. |

Appellant contends that there was no consideration because if the amount of the credits was due on November 2, 1943 (the date of the judgment) then it was barred by the four year statute of limitations (Code Civ. Proc., § 337) at the time of the filing of the satisfaction of judgment. This contention is unsound because the judgment of the court in the prior action ordered that the said credit of $38,399.11 be placed upon the books of the company to the credit of A. O. Dandini, and since the amount of said credit could not properly be paid until the affairs of the company were in condition to pay it in accordance with the 1935 contract, it is obvious that the right to said credits was not barred by the statute of limitations.

Appellant contends also that there was no consideration because the company had a good defense to the claim of credits under the 1935 contract in that Dandini had violated the 1935 contract by his appropriation, and appellant claims that the right to the credits was not decided in the fraud action and is therefore not res judicata.

We are unable to agree with appellant's contention that A. O. Dandini's right to the credits was not determined in the fraud action. The findings hereinbefore set forth indicate clearly that the court intended to find and did find that Dandini was entitled to said credits, and appellant did not appeal from said judgment. Indeed, this court in *Dandini* v. *Dandini, supra* (82 Cal.App.2d 263), in construing the judgment in the fraud action, said at page 266: "The court found the transaction to be fraudulent; that respondent Dandini was, on account of the financial condition of the Dandini Company, not then entitled to receive payment although his accrued commission actually amounted to $38,000.00."

Furthermore it would appear, as contended by respondents, that by stipulation of counsel the right of Dandini to the credits was passed upon by the trial court.

At the trial the question arose as to the financial relationship between Dandini and the company, whether Dandini put money in "with one hand and took it out with the other." An audit was arranged for, one where the auditors "won't necessarily take the books, the statements in the books as the fact, but they will go into whatever is necessary to verify that which is not on the books." "THE COURT: Doesn't that involve his credit against the company? MR. FRIEDMAN [counsel for defendants]: Both ways. In other words, we want to find out under either your theory or my theory when we get through depending on which way the figures are construed, how much of the company's money Dandini got, how much he was entitled to, how much he was not entitled to and how much he paid back if anything. That is really the crux of the matter. MR. JOHNSON [counsel for plaintiff]: If it is necessary to go back with regard to some of the items, back over the time this suit was started in order to clear up some of these items that will appear. MR. FRIEDMAN: There will be no objection to that. MR. JOHNSON: And that will include everything. . . . THE COURT: When they report we simply have to pass upon the condition of Dandini and the company in relation to each other. MR. FRIEDMAN: We are only concerned with Dandini's handling of the money of the company,

how much he is accountable for *and how much credit he is entitled to,* so far as this audit is concerned. MR. JOHNSON: *I believe so."* (Italics added.)

We conclude, therefore, that the right of A. O. Dandini to the credit of $38,399.11 was adjudicated in the fraud action, even though it was also determined that because of the provisions of the 1935 contract it was not then payable.

Appellant next contends that there was no consideration because, even if Dandini were entitled to the credits, the conditions under which they were to become payable had not occurred. Appellant refers to the hereinbefore quoted provision of the 1935 agreement which provides that there shall be no "payments on account of such credits, at any time that the company is in arrears in payments to its creditors or if the making of payments on account of such credits shall reasonably jeopardize the ability of the company to meet its debts and obligations as they fall due."

Mr. Sturgis testified at the hearing of the motion that the company was not in arrears in payments to its creditors; that at the end of each year from 1943 the company had a cash balance on hand ranging from $4,000 to $17,000; and that from the month of March, 1943, the company had been current in the payment of its bills.

The resolution attached to the satisfaction of judgment recites that the directors found and resolved that the company had "ceased to be in arrears in payment to its creditors during the month of March, 1943, and never since said March, 1943, has it been in arrears in its payments to its creditors." The resolution of the board of directors further found and resolved that "the payment of said credits would not in any way jeopardize the ability of the Remillard-Dandini Company to meet its obligations and debts as they fall due, because such payment would be an offset transaction on the books and not any payment of moneys to said A. O. Dandini."

The joint affidavit of directors Stanley, Sturgis and Gatzert and the individual affidavit of Mr. Sturgis recite the full proceedings had from and after the time of the entry of judgment, the amounts paid to the company on account of said judgment, the levies upon property in partial satisfaction of the judgment, the payment to attorneys for appellant of $10,000 attorneys' fees, the payment of costs, etc., the bringing of an action for declaratory relief to determine the question of whether the conditions had arisen making the payment of the credits due, etc. The affidavit of Mr. Sturgis sets forth

the demands made by Dandini on the company, that his credits be offset against the judgment and that these demands started on November 11, 1943, etc.

We are satisfied that the record supports the implied finding of the trial court that the provisions of the 1935 contract did not preclude the directors from agreeing upon the satisfaction of said judgment. We believe also that the record amply supports the conclusion that the agreeing upon the satisfaction did not in any way injure or jeopardize the financial condition of the company, but rather that it was an advantage to the company to have the matter finally closed. If we were compelled by the record to accept the construction which appellant places upon the evidence, we might agree with appellant's contentions, but, as we have hereinbefore pointed out, the record supports the implied finding of the learned trial judge that the action of the directors in agreeing upon and entering the satisfaction of judgment was neither fraudulent nor without consideration.

No other points raised in the briefs require discussion.

In view of the foregoing, the application to take additional evidence is denied, and the order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied August 25, 1950, and appellant's petition for a hearing by the Supreme Court was denied September 21, 1950. Traynor, J., voted for a hearing.